IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**VERLANDA TATE**                                                           **PLAINTIFF**

VS.                                                   CIVIL ACTION NO. 3:09cv350-TSL-JCS

**SANDERSON FARMS, INC.**                                                   **DEFENDANT**

---

### AFFIDAVIT OF BRIAN ROMANO

---

**United States of America**
**State of Mississippi**
**County of Jones**

Brian Romano, being first duly sworn, deposes and says:

1. I am over the age of 21 and otherwise competent to testify. I am Director of Administration for Sanderson Farms, Inc. My job duties and responsibilities include supervision of Sanderson's Human Resources Department (HRD) as well as its Safety and Risk Departments. I am a lawyer, and I provide legal advice from time to time to Sanderson employees. I make this affidavit of my own personal knowledge.

2. Plaintiff Verlanda Tate, in her capacity as Manager of Sanderson's HRD, reported directly to me. On July 28, 2008, Ms. Tate requested leave from attendance at work under the Family and Medical Leave Act. Sanderson granted Ms. Tate's request. In

**EXHIBIT 1**

conjunction with the proper handling of Ms. Tate's request for FMLA leave, I sought the legal advice of outside counsel, Walter Brand with the firm of Watkins & Eager. In addition to telephone conversations, Mr. Brand and I communicated by electronic mail regarding the subject of Ms. Tate's FMLA leave.

3.  The email communications between Mr. Brand and me regarding Ms. Tate's FMLA leave include an email from me to Mr. Brand dated July 30, 2008, and reflecting the time sent as "16:32:40" (4:33 p.m.). I sent this email in reply to an email received from Mr. Brand on July 30, 2008 at 2:31 p.m. My 4:33 p.m. reply email to Mr. Brand included his 2:31 p.m. email to me. It also included an email from "Tracy Graham" to "Walter Brand" dated July 30, 2008. Copy of my 4:33 p.m. email accompanies this affidavit as Exhibit A, which exhibit is being filed under seal.

4.  The referenced July 30, 2008 emails between Mr. Brand and me are attorney-client privileged communications. As a representative of Sanderson, I was communicating with Mr. Brand, and he was communicating with me, for the purpose of facilitating the rendition of professional legal services to Sanderson as client. These communications were intended to be confidential.*

5.  The referenced July 30, 2008 emails reflect "cc" recipients. Mr. Brand's email

---

* The email between Tracy Graham and Mr. Brand also is an attorney-client privileged communication. Ms. Graham is Mr. Brand's assistant. Thus, the email is between Sanderson's lawyer and its lawyer's representative regarding professional legal services being rendered to Sanderson. While Ms. Graham's email indicates the presence of attachments, my inclusion of Ms. Graham's email in my email reply to Mr. Brand did not include such attachments. Nor did my email reply include the documents referenced in Mr. Brand's 2:31 p.m. email.

2

reflects "Reid McKee" as a cc recipient of Mr. Brand's email to me. Mr. McKee is an associate attorney with Watkins & Eager who works under Mr. Brand's supervision. My reply email to Mr. Brand reflects Ms. Tate as a recipient. I erroneously forwarded this email to Ms. Tate at her email address with Sanderson; I intended for my 4:33 p.m. email to Mr. Brand to be a confidential communication between Mr. Brand as Sanderson's lawyer and me as a representative of Sanderson; Ms. Tate was not an intended recipient.

6. I am unable to explain definitively how my 4:33 p.m. email to Mr. Brand was mistakenly copied to Ms. Tate. I can unequivocally state, however, that I had no cognitive intention of forwarding the email to her. Sanderson's email system stores names of addressees to whom emails are commonly forwarded. Ms. Tate and I communicated frequently by email. Consequently, while I have no recollection of doing so and had no intention of doing so, I apparently inadvertently typed something that resulted in the email being forwarded to Ms. Tate.

7. I learned of my erroneous forwarding of the email from Mike Cockrell, Sanderson's Chief Financial Officer and the management person to whom I directly report. Mr. Cockrell told me that Ms. Tate had advised him in a written statement that I had copied her on an email sent to Walter Brand. Ms. Tate knew Mr. Brand was Sanderson's lawyer. After Mr. Cockrell told me about Ms. Tate's receipt of the July 30, 2008 email, I told him that my apparent copying of Ms. Tate on the email was a mistake as I most certainly had not intended to do it. I asked Mr. Cockrell to tell Ms. Tate that she should not have received the

3

July 30, 2008 email and that the email was a Sanderson company record protected by the attorney-client privilege.

8.  I did not personally communicate with Ms. Tate about the July 30, 2008 email because at the time I learned about her receipt of it, Ms. Tate had expressed concern about alleged conduct of mine toward her and Mr. Cockrell was communicating with her about her concerns. I therefore relied on Mr. Cockrell to address with Ms. Tate the inadvertent sending of the confidential attorney-client privileged email.

9.  I had no knowledge of Ms. Tate's provision of a copy of the July 30, 2008 email to a third party, or of Ms. Tate's discussion of its contents with a third party, until after the filing of this action when I learned the email was referenced in her complaint.

_____
BRIAN ROMANO


SWORN TO AND SUBSCRIBED BEFORE ME, within my jurisdiction, on this 28th day of September, 2009.

_____
NOTARY PUBLIC

My Commission Expires:



Angela G. Hite
Notary Public State of MS
My Comm. Expires Sept. 8, 2010

4

# EXHIBIT A

# FILED UNDER SEAL

**EXHIBIT**

A