IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**VERLANDA TATE**                                                                       **PLAINTIFF**

VS.                                       **CIVIL ACTION NO. 3:09cv350-TSL-JCS**

**SANDERSON FARMS, INC.**                                      **DEFENDANT**

---

### MEMORANDUM IN SUPPORT OF MOTION
### OF SANDERSON FARMS, INC.
### FOR ORDER DECLARING DOCUMENT TO BE PRIVILEGED

---

Defendant Sanderson Farms, Inc. ("Sanderson") submits this memorandum in support of its motion for an order declaring Sanderson email communications with its outside counsel on which Plaintiff Verlanda Tate was inadvertently copied to be protected by the attorney-client privilege.

### Introduction

On July 30, 2008, the Director of Administration for Sanderson replied by email to an email of Sanderson's outside counsel concerning legal advice addressing Ms. Tate. The Director mistakenly copied Ms. Tate on his confidential reply email to Sanderson's lawyer. Ms. Tate immediately recognized the error in her inadvertent receipt of the email communications. Sanderson also promptly confirmed to Ms. Tate that the email was

privileged. Sanderson did not and has not waived the attorney-client privilege.

Sanderson did not learn until after the commencement of this action in 2009 that Ms. Tate had apparently disclosed the privileged email communications to a third party. Sanderson demanded return or destruction of the email document and cessation of any further reliance upon it in this action or publication of its contents. Asserting that Sanderson waived the attorney-client privilege, Ms. Tate has declined to return the email document and to assure Sanderson that the email communications will not be further relied upon or published. Therefore, this Court should enter an order protecting the confidential, attorney-client privileged communications.

## Background Facts

In 2008 Ms. Tate was employed as Manager of Sanderson's Human Resources Department. She reported to Brian Romano, Sanderson's Director of Administration. On July 28, 2008, Ms. Tate requested leave from attendance at work under the Family and Medical Leave Act ("FMLA"). Mr. Romano sought the legal advice of outside counsel, Walter Brand with the law firm of Watkins & Eager PLLC, in conjunction with the proper handling of Ms. Tate's request for FMLA leave. (Exh. 1, Romano Affid. ¶s 1, 2.)[1]

At 2:31 p.m. on July 30, 2008, Mr. Brand sent Mr. Romano an email related to Ms. Tate's FMLA leave. This Brand email reflected "Reid McKee," an associate attorney with

---

[1] Exhibit references are to the exhibits to the accompanying Motion of Sanderson Farms, Inc. For Order Declaring Document to be Privileged.

2

Watkins & Eager, as a "cc" recipient. It also included an earlier email from "Tracy Graham," Mr. Brand's assistant, to "Walter Brand." Mr. Romano replied to the 2:31 p.m. Brand email at 4:33 p.m. on July 30, 2008. The Romano reply email included the earlier Brand and Graham emails (collectively the "July 30 Email"). (Exh. 1, Romano Affid. ¶s 3, 5.)[2]

On July 31, 2008, Ms. Tate sent a letter to Mike Cockrell, Sanderson's Chief Financial Officer and the management person to whom Mr. Romano reports. Ms. Tate's letter included a "statement of concern" in which she questioned why she received "the email between Brian and Walter." Ms. Tate knew Walter Brand was Sanderson's lawyer. She specifically asked about the attorney-client privilege status of the email. (Exh. 2, Cockrell Affid. ¶ 3.)

After review of Ms. Tate's July 31 letter and her accompanying statement, Mr. Cockrell spoke with Mr. Romano about the July 30 Email. (Exh. 1, Romano Affid. ¶ 7; Exh. 2, Cockrell Affid. ¶ 3.) It was then that Mr. Romano discovered that he had copied Ms. Tate on the July 30 Email. He absolutely did not intend to do so. (Exh. 1, Romano Affid. ¶s 6, 7.)

Mr. Romano told Mr. Cockrell that the apparent copying of Ms. Tate on the July 30 Email was a mistake. Mr. Romano asked Mr. Cockrell to tell Ms. Tate that she should not have received the July 30 Email and that the Email was a Sanderson company record protected by the attorney-client privilege. Mr. Romano did not personally communicate with

---

[2] The Brand email referenced enclosed documents and the Graham email reflected attachments. Mr. Romano's reply email did not include such documents or attachments. (Exh. 1, Romano Affid. ¶ 4 n.*.)

3

Ms. Tate about the July 30 Email because Ms. Tate had expressed concern about alleged conduct of Mr. Romano toward her, and Mr. Cockrell was communicating with Ms. Tate about these concerns. (Exh. 1, Romano Affid. ¶s 7, 8.)

Ms. Tate's July 31 letter to Mr. Cockrell requested Mr. Cockrell meet with her on her scheduled return to work on August 12, 2008. Mr. Cockrell met with Ms. Tate as she requested. At the meeting Mr. Cockrell discussed Ms. Tate's concerns with her, including the July 30 Email between Mr. Romano and Mr. Brand which had been inadvertently forwarded to her. Mr. Cockrell told Ms. Tate that the Email had been mistakenly sent to her. Mr. Cockrell further advised Ms. Tate that the Email was intended to be and was a confidential, attorney-client privileged communication. Mr. Cockrell emphasized the confidential, attorney-client privileged nature of this company record. (Exh. 2, Cockrell Affid. ¶ 4.) Indeed, Ms. Tate herself affirmatively acknowledges in her Complaint that she "inadvertently received email correspondence between Mr. Romano and Defendant's attorney." (Complaint ¶ 25.)

Sanderson had no knowledge of Ms. Tate's provision of a copy of the July 30 Email to a third party, or of Ms. Tate's discussions of its contents with a third party, until after service of the Complaint in this action. The allegations in the Complaint were the first notice to Sanderson that Ms. Tate had not honored Mr. Cockrell's advices regarding the mistaken provision to her of the confidential, attorney-client privileged communications between Sanderson and its lawyer. (Exh. 1, Romano Affid. ¶ 9; Exh. 2, Cockrell Affid. ¶ 5.)

4

Sanderson counsel thereafter re-asserted the attorney-client privilege and demanded destruction or return of the July 30 Email and cessation of any further publication of its contents. (Exh. 3.) Contending Sanderson waived the privilege, Ms. Tate has refused to return the email document or to recognize the privileged nature of its contents.

## Argument

Federal Rule of Evidence 501 provides that unless federal law requires otherwise and except for civil actions where "state law supplies the rule of decision," questions of privilege "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Jurisdiction over this action rests on 28 U.S.C. § 1331. Four of the five counts of the Complaint purporting to allege substantive causes of action arise under federal law, including Count IV purportedly arising under the FMLA. Since federal law supplies the rule of decision, federal privilege law and therefore federal privilege waiver law are to be applied. *See Alldread v. City of Grenada*, 988 F.2d 1425, 1433-35 (5th Cir. 1993) (applying federal common law to attorney-client privilege issues in FLSA action).

Federal courts' recognition of the attorney-client privilege is indisputably longstanding. "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682 (1981) (citing 8 *Wigmore, Evidence*). The privilege historically has been applied to communications between the client and his lawyer made in confidence for

the purpose of legal advice, thereby permanently protecting such communications from disclosure unless the protection is waived. *See* 8 *Wigmore, Evidence* § 2292 (McNaughton rev. 1961) (copy attached). The "purpose [of the privilege] is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 101 S. Ct. at 682.

The Fifth Circuit observed in *Alldread* that "there is no consensus" among federal courts "as to the effect of inadvertent disclosures of confidential communications" on loss or waiver of the privilege. 988 F.2d at 1434. Some courts hold the privilege is lost even if the disclosure is inadvertent. The majority of courts recognize inadvertent disclosures may result in waiver but do not apply a "'strict responsibility' rule of waiver." *Id.* The Fifth Circuit in *Alldread* adopted the majority view, finding "an analysis which permits the court to consider the circumstances surrounding a disclosure on a case-by-case basis is preferable to a *per se* rule of waiver." *Id.* The court concluded this approach served the purpose of the attorney-client privilege by protecting communications intended to remain confidential while allowing for loss of the privilege where circumstances demonstrate continued protection is not warranted. *Id.*

The magistrate judge in *Alldread* examined factors concerning (i) the precautions taken to prevent disclosure, (ii) the time needed to correct the mistake, (iii) the scope of discovery, (iv) the extent of disclosure, and (v) "the overriding issue of fairness." 988 F.2d at 1433. The court found the producing party had not taken reasonable precautions to

prevent disclosure and that the disclosure was complete. Even so, the magistrate judge concluded other considerations outweighed these factors and found no waiver. Fairness considerations dictated return of the materials. The party immediately asserted the privilege on learning of the production, the communications were clearly privileged and the disclosure was obviously inadvertent. *Id.* at 1433-34. The Fifth Circuit affirmed.

The same result obtains here. Mr. Romano plainly sought to facilitate the receipt of legal advice through his email reply to outside counsel. Mr. Romano did not intend to disclose his communications to Mr. Brand, or those of Mr. Brand with him, to Ms. Tate. She herself knew this. Within days Sanderson further explicitly so told her. Ms. Tate's apparent intention to publish these confidential communications only surfaced in this action. Ms. Tate has resisted Sanderson's efforts in this proceeding to preclude use of the July 30 Email by erroneously maintaining Sanderson's conduct in 2008 waived the privilege. As explained above, there was no waiver.

## Conclusion

The July 30 Email was part of Mr. Romano's ongoing pursuit and Mr. Brand's ongoing provision of legal advice. Its disclosure to Ms. Tate was indisputably inadvertent. Fairness considerations dictate a court order directing return of the email document to Sanderson and preclusion of publication of any such communications in association with this action or otherwise.

This 16th day of October, 2009.

        Respectfully submitted,

        **SANDERSON FARMS, INC.**

BY:   /s/ Paul H. Stephenson, III
       Paul H. Stephenson, III (MB # 7864)
       Walter J. Brand (MB # 4313)
       Amy C. Felder (MB # 10667)
       Watkins & Eager PLLC
       400 East Capitol Street (39201)
       Post Office Box 650
       Jackson, Mississippi 39205
       Telephone: (601) 965-1900
       Facsimile: (601) 965-1901

       *pstephenson@watkinseager.com*
       *wbrand@watkinseager.com*
       *afelder@watkinseager.com*

        **ITS COUNSEL**

## CERTIFICATE OF SERVICE

The undersigned counsel for Sanderson Farms, Inc. certifies that he has this day electronically filed the foregoing Memorandum in Support of Motion of Sanderson Farms, Inc. for Order Declaring Document to be Privileged on counsel for Plaintiff using the ECF system which sent notification of such filing to the following:

Louis H. Watson, Jr.
*louis@louiswatson.com*
Victoria Prince
*victoria@louiswatson.com*
Louis H. Watson, Jr., P.A.
520 East Capitol Street
Jackson, Mississippi 39201

This 16th day of October, 2009.

/s/ **Paul H. Stephenson, III**