VERLANDA TATE                                              PLAINTIFF

VS.                               CIVIL ACTION NO. 3:09CV350TSL-JCS

SANDERSON FARMS, INC.                                     DEFENDANT

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant
Sanderson Farms, Inc. for summary judgment pursuant to Rule 56 of
the Federal Rules of Civil Procedure, and its separate motion for
partial summary judgment on damages.  Plaintiff Verlanda Tate has
now responded to defendant's motion,[1] and the court, having
considered the memoranda of authorities, together with
attachments, submitted by the parties, concludes that defendant's
summary judgment motion is well taken and should be granted.

Plaintiff Verlanda Tate filed the present action following
her termination from employment with Sanderson Farms, Inc.
(Sanderson or the Company).  Plaintiff originally asserted claims
for race and gender discrimination, and for retaliation in

---

[1]    Plaintiff initially responded to the motion only as it
pertained to her claim for retaliation under Title VII and 42
U.S.C. § 1981.  She moved under Rule 56(f) for discovery and for a
continuance of her response to the motion as it pertained to her
claims for retaliation under the Family Medical Leave Act and for
intentional infliction of emotional distress.  The court denied
her Rule 56(f) motion by memorandum opinion and order dated June
3, 2010.

violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, for retaliation under the Family Medical Leave Act (FMLA), 29 U.S.C.A. § 2601 *et seq.*, and for intentional infliction of emotional distress. However, in response to defendant's motion seeking summary judgment on all of these claims, plaintiff conceded her race and gender discrimination claims, leaving for consideration the motion as it relates to her Title VII and § 1981 retaliation claim, her FMLA retaliation claim and her claim of intentional infliction of emotional distress. The court will consider these claims in turn.

According to her complaint in this cause, plaintiff, who is black, became employed as Sanderson's Human Resources Manager in April 2007, in which position she worked under the direct supervision of a white manager, Brian Romano, Director of Administration. In addition to plaintiff, the Human Resources Department included two white Human Resources Coordinators, who worked under plaintiff's supervision. Plaintiff alleges that as part of her job to develop and monitor the coordinator positions, she implemented weekly reports to measure the coordinators' work performance; and although Romano was initially supportive of the weekly report requirement, after the coordinators complained to him in May 2008 about having to prepare these reports, he unilaterally eliminated the weekly reports and decided to hold weekly meetings instead. Plaintiff avers that at these weekly

meetings, Romano encouraged and allowed input from the coordinators, but terminated the meetings before plaintiff was given a chance to speak.  Plaintiff alleges that when she complained about this to Romano, he responded that she "did not fit in to the culture" at Sanderson, and told her that she only "caused damage" and "acted like the world was against her," comments which she found highly upsetting.  Eventually, following this conversation, the weekly meetings stopped and, according to plaintiff, she was relieved of her supervisory responsibilities over the coordinators, without explanation.

Plaintiff alleges that due to what she then perceived as a racially hostile working environment and harassment by Romano, she suffered emotional distress, for which she sought medical attention and was advised to take two weeks' medical leave. According to plaintiff, when she went to speak to Romano about her condition, he yelled at her and said he was too busy to talk to her.  Plaintiff then spoke with the company president about her situation, and was told to take the time she needed to take care of herself.

Plaintiff took two weeks of FMLA leave, after which she returned to her normal work responsibilities on August 12, 2008, only to learn that Romano's supervisor, Sanderson's Chief Financial Officer Mike Cockrell, was conducting an investigation regarding her FMLA leave, and also learned that an investigation

3

was to be made regarding complaints by her subordinates that they were uncomfortable around her and in their meetings with her. Plaintiff states that the following week, she informed both Romano and Cockrell that she considered that this treatment amounted to racial harassment and constituted a hostile work environment. She followed up the next day with a written internal complaint against Romano and a formal complaint with the Equal Employment Opportunity Commission for "harassment, discrimination and retaliation."

The following day, Cockrell informed plaintiff that since she claimed she was being harassed and subjected to a hostile work environment by Romano, she would be moved to another office, and she was immediately moved to a smaller office on another floor, away from her coworkers. A week later, after Cockrell informed her that his investigation had failed to substantiate her claims, she was moved back to her old office, but according to plaintiff, the harassment continued. She claims that she was issued a "fabricated" write-up and placed on a performance improvement plan based on performance issues that had occurred months earlier but which were uncovered by Cockrell during his investigation, and she complains that ultimately she was terminated, ostensibly because of deficiencies in her performance, but, in fact, in retaliation for her complaints of discrimination.

In her response to defendant's motion and her accompanying affidavit, plaintiff contends that after she filed her complaints of discrimination, she was retaliated against in the following ways:

(1) She was relocated to a less favorable work station;

(2) She was excluded from meetings and emails regarding certain projects;

(3) An untrained and incompetent person (Mike Cockrell) was assigned to investigate her complaints, who yelled at her and called her a "liar" and who conducted a sham investigation in order to generate some basis for terminating her employment;

(4) She was placed on a performance improvement plan as a result of this sham investigation;

(5) She was assigned more complex or complicated work assignments yet given a shorter time than normal to complete them;

(6) Her FMLA leave request was questioned; and ultimately,

(7) She was terminated as a result of her performance of the more complex and complicated job duties she was assigned.

Plaintiff's retaliation claim based on Title VII and § 1981 are considered under the familiar McDonnell Douglas analysis. To sustain a claim under this framework, plaintiff must first establish a prima facie case of retaliation by proving (1) that she engaged in activity protected by Title VII, (2) that an

adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action.  See Evans v. City of Houston, 246 F.3d 344, 352 (5th Cir. 2001).  Once a prima facie case has been established, the burden of production shifts to the employer who must furnish a legitimate non-retaliatory explanation.  Id.  If the employer provides such an explanation, the inference of retaliation falls away and the burden shifts back to the employee to demonstrate the explanation is a mere pretext for discrimination or retaliation.

In its motion, Sanderson first argues that plaintiff cannot establish a prima facie case of retaliation because, while Tate did file complaints of discrimination, the evidence demonstrates that these complaints were not made in good faith and hence do not constitute protected activity.  See Glorioso v. Mississippi Dept. of Corrections, No. 99-60147, 1999 WL 706173, 3 (5th Cir. Aug. 20, 1999) (explaining that an employee has engaged in activity protected by Title VII if she has opposed any practice made an unlawful employment practice by Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII, and observing that the opposition clause of § 2000e-3(a) requires the employee to demonstrate that she had at least a good faith, reasonable belief that the practices she opposed were unlawful) (quoting 42 U.S.C. § 2000e-3(a)) (additional internal quotations

6

and citations omitted). In the court's opinion, defendant has failed to sustain its burden to demonstrate the absence of a genuine issue of material fact on the question whether plaintiff in good faith believed she was being discriminated against.

Sanderson Farms argues alternatively that even if plaintiff could establish a prima facie case of retaliation, she cannot prevail on her claim, since she has presented no evidence to substantiate her allegations and/or has presented no evidence to rebut Sanderson's articulated legitimate, non-retaliatory reasons for the company's actions, including her termination.

In this vein, Sanderson notes that, whereas plaintiff has alleged in her complaint that she was excluded from meetings and emails regarding certain projects, and whereas she argues in her response to the motion that Romano excluded her from emails about work projects and meetings, she has offered no *evidence* of any meetings or emails from which she was excluded.[2]

Moreover, Sanderson denies that it *required* plaintiff to move to a different office while the Company undertook to investigate plaintiff's discrimination complaint against Romano and claims instead that since plaintiff's office was located next door to Romano's office, the company merely offered to allow plaintiff to

---

[2] Sanderson notes that in her deposition, plaintiff identified two meetings in which Romano allegedly limited her participation, both such testimony is irrelevant to her retaliation complaint since both meetings occurred prior to her discrimination complaints.

move to another office, and she accepted this offer. Sanderson

contends, though, that regardless of whether plaintiff was ordered

to move or whether she instead requested to be moved, the evidence

establishes beyond reasonable dispute that the move was not

retaliatory but rather was for a legitimate, non-retaliatory

reason. More specifically, Sanderson's anti-harassment and

discrimination policies provide that the company make take

"interim steps" during the course of a human resources

investigation to protect the integrity of the investigation, to

protect the claimant and to protect the Company from additional

claims or exacerbation of existing claims. Sanderson contends

that in view of plaintiff's charge that Romano had mistreated her

because of her race, the Company's decision to temporarily

relocate her to an office away from Romano's office (which, it

notes, was also accompanied by a temporary reassignment of

plaintiff's reporting responsibilities from Romano to Cockrell),

was a legitimate, non-retaliatory decision to protect plaintiff

and to protect the Company from further allegations, which

plaintiff cannot possibly demonstrate was pretext for retaliation.

Cf. Nash v. Electrospace Sys., Inc., 9 F.3d 401, 404 (5th Cir.

1993) (holding that employee's transfer to another supervisor was

not retaliation "but an act that insulated her from further

contact with [the alleged harasser]"). In response to the motion

on this point, plaintiff does not deny that Sanderson's policy

allows it to take temporary steps during an investigation to protect the integrity of the investigation and/or to protect the complainant and the Company, but she asserts in her accompanying affidavit that requiring her to move was "total retaliation because no other person has been moved for filing a complaint." Yet at the time she filed her discrimination complaint, plaintiff had worked for Sanderson for only a year and thus cannot claim personal knowledge of what had transpired in the Company's history; and she has offered no other evidence to support such a broad declaration that "no other person had ever been moved." Certainly she has identified no evidence tending to show that the Company was ever confronted with a similar situation in which it failed to take similar interim measures to separate a complainant from his or her alleged harasser.[3]

---

[3]     The court would note that in response to a summary judgment motion, the non-movant is required to "submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause[s] of action." Malacara v. Garber, 353 F.3d 393, 404 (5th Cir. 2003). In support of her response to the motion, plaintiff cites three exhibits, including her affidavit, which is included with her response; her roughly 300-page deposition, which is included as an exhibit to defendant's motion; and Sanderson's Rule 30(b)(6) deposition, which is also attached as an exhibit to defendant's motion. However, while she purports to rely on her deposition, plaintiff's memorandum contains only a single reference to a few pages of the deposition. The court declines to read through plaintiff's deposition in search of evidence to support her claims. Indeed, the Fifth Circuit has recognized many times that the court has "no duty 'to sift through the record in search of evidence to support a party's opposition to summary judgment.'" Fuentes v. Postmaster Gen. of U.S. Postal Serv., 282 F. App'x 296, 300 (5th Cir. 2008) (citing Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th

Regarding her allegation that defendant retaliated against her by questioning her request for FMLA leave, defendant points out that plaintiff has presented no competent evidence in support of this assertion.  Assuming solely for the sake of argument that "questioning" an employee's request for FMLA leave could constitute and adverse employment action for purposes of a retaliation claim, when the leave is ultimately granted in its entirety, the only evidence plaintiff has ever identified in support of her allegation that Sanderson questioned her FMLA leave request are privileged email communications between Sanderson and its counsel, which the court has held are inadmissible.

Plaintiff further charges that Sanderson retaliated against her by assigning the task of investigating her discrimination complaint to an individual who had no human resource training, who had never conducted a full investigation of a discrimination allegation, who was biased against her (as evidenced by the fact that he yelled at her and called her a "liar"), and whose purported investigation was a mere "sham" which was never intended to uncover the truth about her discrimination allegations but

Cir. 1998); <u>Skotak v. Tenneco Resins, Inc.</u>, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)); <u>see also</u> <u>Malacara</u>, 353 F.3d at 405 ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.").

which was instead used as a guise to uncover performance issues which could then be used to set her up for termination.

In reply, Sanderson has presented evidence of Cockrell's credentials, which thoroughly belies plaintiff's challenge to his qualifications to conduct a proper discrimination investigation. Sanderson further notes, and correctly so, that while plaintiff characterizes Cockrell's investigation as a "sham," she has offered no *evidence* to support this conclusory charge.  In contrast, Sanderson has presented Cockrell's own affidavit, in which he clearly identifies the purpose of his investigation, specifically describes the particulars of his investigation, and explains in detail the reasons for his ultimate conclusion that there was no racial discrimination by Romano.  Cockrell also explains in his affidavit that during the course of his investigation of plaintiff's discrimination complaint, he became aware of deficiencies in plaintiff's performance as Human Resources Manager.  He states that given the critical importance of the Human Resources Department to Sanderson, he had "no choice but to address with [plaintiff] for the good of the Company."

For her part, in her response to the motion, plaintiff does not dispute defendant's proof that performance deficiencies were uncovered during Cockrell's investigation of her discrimination complaint (and she certainly has identified no proof to the contrary), nor does she deny that these deficiencies presented

11

genuine cause for concern which the Company had a legitimate interest in addressing. Instead, she merely declares that prior to her discrimination complaint, no issue had ever arisen with regard to her performance, and, since the performance issues uncovered by Cockrell had never been brought to his attention before his investigation of her discrimination complaint, then there exists a genuine issue of material fact as to whether or not Sanderson "drummed up these performance issues" in order to orchestrate her termination. In the court's opinion, however, the mere fact that performance issues were first discovered during the investigation does not create an issue of fact for trial on whether the purpose of the investigation was legitimate.[4]

In support of its motion, Sanderson has also submitted evidence to refute plaintiff's allegation that following the completion of Cockrell's investigation of her discrimination complaint, she was given "abnormally large projects with unattainable deadlines in which to complete them." According to Sanderson's proof, plaintiff was given only three work assignments between the time the investigation concluded and plaintiff's

---

[4]    The record evidence clearly contradicts plaintiff's contention that no issue had ever been raised regarding her performance until after she filed her discrimination complaints. While the specific incidents and performance issues raised by Cockrell may not have been known to Cockrell prior to his investigation, the evidence establishes without dispute that complaints about plaintiff, including concerning her handling of human resource issues, her alleged rudeness and lack of cooperation, had been made to Romano by a number of employees.

12

termination, all of which were within her job description and none of which was unusually burdensome. One assignment was to investigate a sexual harassment complaint by an employee against a co-worker; the other two involved plaintiff's providing an update on two projects– identified as an impact ratio analysis and the electronic I-9 check process–which had been assigned to plaintiff months earlier and one of which (the impact ratio analysis) was already long overdue.

In her affidavit submitted in response to the motion, plaintiff states that she was given "huge projects with much shorter deadlines," which required that she work late several nights. Plaintiff describes these as "updates to what I was doing as an HR manager," yet she does not address defendant's explanation that plaintiff had begun the I-9 project and the impact ratio analysis months before she made her discrimination complaints or that the impact ratio analysis was long overdue.

Plaintiff also asserts that she was assigned to investigate a sexual harassment complaint, and was ordered to complete a thorough investigation immediately, and in fact, was directed by Cockrell to conclude this complex investigation even after she informed him that she had not spoken to all the witnesses. However, the record reflects that when he assigned her the investigation, Romano informed her that, "[b]arring any unforeseen difficulties, [he] would like for [her] to have this completed

before the end of the week." Plaintiff merely responded, "No problem," and did not indicate that she considered the investigation was or would likely be particularly complex. Plaintiff apparently did not complete the assignment within the time frame requested by Romano, but there is nothing to indicate that she ever suggested to Romano that she had encountered unforeseen difficulties. And while Romano's and Cockrell's description of the nature of the complaint which plaintiff was assigned to investigate suggests that it was not especially complex, plaintiff does not explain in her affidavit why she considered the investigation complex, or why it was not and could not have been completed within the time frame requested by Romano. In short, the evidence cited by plaintiff in support of this theory is insufficient to create a genuine issue for trial on plaintiff's allegation that Sanderson assigned her more onerous projects after she filed her discrimination complaint.

Likewise, plaintiff has failed to identify any evidence tending to support her charge that she was terminated in retaliation for filing complaints of discrimination. Plaintiff's theory, to which the court has alluded supra, is that Sanderson did not conduct a legitimate investigation of plaintiff's discrimination complaint but rather, in retaliation for her complaint, used the investigation as a ruse to investigate her work performance, with the goal of uncovering performance issues,

which the Company could then use as an excuse to terminate her, or to set her up to be terminated. Plaintiff further theorizes that by giving her unreasonably burdensome and difficult work assignments, particularly after placing her on a performance improvement plan in response to alleged deficiencies uncovered in Cockrell's investigation, Sanderson set her up to fail, so that it would have grounds for her termination. However, these are nothing more than theories, grounded on speculation, not competent evidence.

Moreover, while Sanderson has articulated, and presented supporting proof of its legitimate, non-retaliatory reasons for terminating plaintiff's employment, plaintiff has failed to identify evidence to create a genuine issue of fact on her assertion that the Company's reasons are pretext for its true, retaliatory motive for firing her. In his affidavit, Cockrell, who made the decision to terminate plaintiff's employment, explains that while investigating plaintiff's discrimination complaint, he was told of instances in which she had failed to respond to inquiries about human resources matters from personnel within the Company and of her failure to effectively communicate and work cooperatively with various company personnel.[5] Cockrell

---

[5] Affidavits of numerous persons interviewed by Cockrell during his investigation confirm that the interviewees informed Cockrell of instances in which plaintiff had failed to respond to their human resources inquiries. A number of these individuals reported that when it became clear to them over time that

explains that following the conclusion of his investigation, he met with plaintiff to discuss his findings and to address her performance deficiencies.  According to Cockrell, during this meeting, he informed plaintiff that he believed her participation in non-company outside "leadership" organizations in which she regularly participated was keeping her away from work too often and was interfering with her ability to do her job so that in the future, she would need to put her work with Sanderson ahead of such outside activities.  He explains that he also informed her that in light of the communication issues that had come to light during his investigation, he intended to institute a formal training program by the Company's Corporate Development and Training Department to assist plaintiff and the members of the Human Resources Department in improving their communication and relational problems.  Finally, he told her in the meeting that he would monitor her performance for the ninety-day period covered by her performance improvement plan.

Cockrell states that notwithstanding his explicit instructions to plaintiff, he learned on Monday September 22, 2008 that on Friday September 19, plaintiff had missed the first

---

plaintiff would not respond to their inquiries on human resource matters, they simply stopped directing inquiries to her and went elsewhere in the Company for answers.  Some of the interviewees recounted to Cockrell incidents in which plaintiff had been abrupt, curt and rude, and in fact, two reported that they had considered quitting their jobs with Sanderson so they would not have to work with plaintiff.

communications training session that had been scheduled by the Training Department so that she could attend an outside "leadership" organization function. When he confronted her about this, she responded that she did not believe her communication skills needed improvement, and that in any event, the manager of the Training Department, Robin Robinson, had told her she could miss the training session.[6]

Cockrell explains further that a day or two before this incident, as part of his monitoring function, he had reviewed an interim report which plaintiff had prepared on the sexual harassment investigation that had been assigned to her by Romano and become concerned about her capability to effectively perform the job of Human Resources Manager. In that interim report, plaintiff indicated that she had not yet interviewed the complainant, and yet she reported her preliminary conclusion that there had been no violation of the company's sexual harassment policy. Cockrell states that he believed plaintiff's decision to

---

[6]        Robin Robinson has submitted her own affidavit in which she denies having told plaintiff she could miss the training session, and states she was surprised when plaintiff failed to attend the session because she had been present in the meeting in which Cockrell had emphasized to plaintiff the importance of the training and of her being present in the office instead of being out for leadership and other organizational or community activities. Defendant submits that regardless of whether plaintiff had Robinson's permission to miss the training, her decision to miss the training for an outside function, after being counseled regarding the need for commitment to her job, demonstrated her lack of judgment and commitment to Sanderson.

write an interim report, before even interviewing the complainant, was "at odds with basic, rudimentary human resources procedures, and showed poor judgment," as it exposed the Company to a charge that Sanderson has prejudged the complaint.  He was also concerned about the correctness of the plaintiff's conclusion, which he believed reflected her inability to recognize what appeared from the witness interview statements to be a clear violation of Sanderson's policy against sexual harassment.  That is, plaintiff, who was charged with implementing and enforcing the Company's sexual harassment policy, failed to comprehend the obviously sexual nature of the alleged harasser's comments to the complainant.  Then, on September 22, the same day he learned that plaintiff had missed the communications training on the previous Friday, he received a complaint from the complainant in the sexual harassment investigation (who was also one of plaintiff's subordinates), who reported that plaintiff had interviewed her on September 19, and that during the interview, plaintiff had been unreceptive and had effectively refused to listen to her attempt to describe the incident.  Additionally, Cockrell was informed that plaintiff had failed to have a witness present during the interview, which, he states, violated a minimum level of appropriate practice in performing human resources investigations.

According to Cockrell, upon deliberation, he concluded that plaintiff's knowing decision to skip the training meeting and her

18

deficiencies in the sexual harassment investigation demonstrated that she lacked the intent or ability to comply with the Company's instructions and to perform to the level required by Sanderson, and he therefore decided she should be discharged for these reasons.  Plaintiff has pointed to no evidence tending to show that these reasons were pretext for unlawful retaliation.[7]

For all of the foregoing reasons, summary judgment will be entered for defendant on plaintiff's Title VII and § 1981 retaliation claims.

Sanderson has also moved for summary judgment on plaintiff's FMLA retaliation claim and her state law claim for intentional infliction of emotional distress.  As defendant notes in its motion, plaintiff's FMLA retaliation claim is based on her review of the contents of certain email communications between Sanderson and its counsel, which the court has held are inadmissible.  In response to defendant's motion, plaintiff sought discovery and a continuance pursuant to Federal Rule of Civil Procedure 56(f), claiming that she could not respond to the motion as it relates to

_____

[7]     The court acknowledges that plaintiff has alleged that at some point during this process, Cockrell called her a "liar," yet it notes that she has pointed to no evidence relating to this allegation.  Sanderson has acknowledged that there was an occasion when Cockrell referred to plaintiff as a "liar," though it notes that plaintiff agreed in her deposition that he had repeatedly apologized for his use of this term.  Neither party has directed the court to any evidence that would explain when or the context in which this name-calling occurred.   Absent some indication as to the context, plaintiff has certainly not shown that this might support an actionable claim for retaliation.

her FMLA retaliation claim unless she were permitted to engage in discovery relating to the emails. By memorandum opinion and order dated June 3, 2010, the court denied plaintiff's motion. As plaintiff has offered no competent evidence in support of her FMLA retaliation claim, this claim will be dismissed.

Plaintiff's claim for intentional infliction of emotional distress will also be dismissed. In support of its motion, Sanderson has argued that the incidents which plaintiff cited as the bases for this claim are not the kind of extreme and outrageous conduct required to support a claim under Mississippi law for intentional infliction of emotional distress. Plaintiff did not take issue with this assertion, but argued in her response to defendant's motion that if she were allowed discovery regarding the email communications relating to her FMLA leave, she would have further evidence to support her intentional infliction of emotional distress claim. Again, plaintiff's discovery request was denied, and she has presented no evidence or argument in support of her claim for intentional infliction of emotional distress, so that summary judgment on that claim is in order.

Based on all of the foregoing, it is ordered that Sanderson's motion for summary judgment is granted.[8]

---

[8] It follows that its alternative motion for partial summary judgment is moot.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 4th day of August, 2010.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE